**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Betty Lou Haldiman, an individual; John B. Haldiman, Jr., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Continental Casualty Company, an Illinois corporation,<br><br>Defendant. | No. CV-13-00736-PHX-GMS<br><br>**ORDER** |

Pending before the Court is Plaintiffs' Motion to Remand, (Doc. 17), and Second Application for Order to Show Cause Regarding Request for Preliminary Injunction, (Doc. 8). For the reasons discussed below, the Motions are denied.

**BACKGROUND**

On March 15, 2013, Plaintiffs Betty Lou Haldiman and John B. Haldiman ("the Haldimans"), filed this action in the Superior Court of Arizona. (Doc. 1 ¶ 2.) The Haldimans allege breach of contract, breach of the duty of good faith and fair dealing (insurance bad faith), and unfair practices and frauds. (Doc. 1-1, Ex. A (Compl.) ¶¶ 17–37.) On April 11, 2013, Defendant Continental Casualty Company ("CCC"), removed this case to federal court, alleging subject matter jurisdiction based on diversity of citizenship and an amount in controversy greater than $75,000. (Doc. 1 ¶ 3.) CCC is an Illinois corporation and has its principal place of business in Illinois. (*Id.* ¶ 9.) The Haldimans are citizens of Arizona. (Doc. 1-1, Ex. A (Compl.) ¶ 1.)

Many years ago the Haldimans purchased a "Long-Term Care Insurance Policy" ("the policy") from CCC. (*Id.* ¶ 3.) Under the policy, Ms. Haldiman is entitled to benefits of $151 per

day for long-term care in a qualifying facility after an elimination period of 90 days. (Doc. 1 ¶ 14.) The benefits last as long as Ms. Haldiman is alive and receiving qualifying care. (*Id.*) According to a class action settlement, even if Ms. Haldiman does not reside in a facility that provides qualifying care, she is nevertheless entitled to 25% of the daily Long Term Care Facility Benefit contained in [the] policy or 25% of the actual daily cost of the facility, whichever is greater." (Doc. 12-1, Ex. B at 4.)[1] At some point, Ms. Haldiman moved to the Beatitudes Campus. (Doc. 1-1, Ex. A (Compl.) ¶¶ 5–7.) CCC determined that Ms. Haldiman's place of residence did not qualify as a long term care facility under its policy. (*Id.* ¶¶ 10–15.) Although CCC has sent checks for 25% of Ms. Haldiman's benefits in accordance with the settlement agreement, (Doc. 20-1, Ex. A), the Haldimans' claims for full benefits have been denied by CCC thus far, (Doc. 1-1, Ex. A (Compl.) ¶¶ 10–16). Without specifying a dollar amount, the Haldimans seek an award of (1) actual damages, (2) general damages including those for emotional distress and consequential damages, (3) punitive damages, (4) a temporary restraining order, preliminary injunction and permanent injunction preventing CCC from denying full benefits, (5) reasonable attorneys' fees and costs, (6) and further relief as the Court deems proper. (*Id.* ¶¶ 17–37.)

After filing their Complaint, the Haldimans submitted an Arizona Rule of Civil Procedure 68 Offer of Judgment, proposing judgment for $17,747 and an additional $4,222 per month as long as Ms. Haldiman is a resident at the Beatitudes. (Doc. 1-1 Ex. A at 16.) The Haldimans also submitted a certificate in Superior Court stating that their case was not subject to the Uniform Rules of Procedure for Arbitration because they are seeking injunctive relief. (Doc. 1-1 Ex. A at 15.)

/ / /

/ / /

---

[1] The Court takes judicial notice of the insurance policy and the class action settlement notice because they are **Error! Main Document Only.**documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading,"*Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (alteration in original).

# DISCUSSION

## I. MOTION TO REMAND

### A. Legal Standard

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A party may remove an action from state court only if the action could have been brought in the district court originally. *Ramirez v. Fox Television Station, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993). The party asserting federal jurisdiction has the burden of proof on a motion to remand to state court, and the removal statute is strictly construed against removal jurisdiction. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (noting a "strong presumption" against removal jurisdiction, and stating that "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance.")

When removal is based on diversity jurisdiction, the removing party must show that (1) the opposing parties are not citizens of the same state and (2) "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a). The burden of proving the amount in controversy depends on whether the plaintiff's complaint is ambiguous or whether it alleges a specific amount. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007); *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402, 404 (9th Cir. 1996). Where it is unclear from the complaint whether the plaintiff has pleaded the required amount in controversy, "the removing defendant bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds [the jurisdictional amount]." *Sanchez*, 102 F.3d at 40; *see also Gaus*, 980 F.2d at 566–67. "[R]emoval 'cannot be based simply upon conclusory allegations' where the [complaint] is silent." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997).

/ / /

/ / /

/ / /

### B. CCC Has Shown that the Amount in Controversy More Likely Than Not Exceeds $75,000.

CCC removed this action based on diversity jurisdiction. (Doc. 1 ¶ 3.) The Haldimans contend that CCC has not met its burden to establish the requisite amount in controversy. The Haldimans did not specify the amount in controversy in their Complaint, which places the burden on CCC to establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. There are several bases on which CCC carries its burden.

#### 1. Compulsory Arbitration Certificate

The Notice of Removal relies in part on the certificate that the Haldimans filed in Superior Court stating that the claim was not subject to compulsory arbitration. (Doc. 1 ¶ 13.) Arbitration is required when "[n]o party seeks affirmative relief other than a money judgment" and "[n]o party seeks an award in excess of the jurisdictional limit [$50,000] for arbitration." Ariz. R. Civ. P. 72(b). CCC contends that the amount in controversy is at least greater than $50,000 because Plaintiffs have filed a certificate saying they are not subject to compulsory arbitration. (Doc. 1 ¶ 13.) However, as stated in the Haldimans' certificate, they are not subject to arbitration because they seek injunctive relief; not because they seek an award greater than $50,000. (Doc. 1, Ex. 1 at 15.) Moreover, even if damages exceeded $50,000, whether damages exceed $75,000 or not would remain unclear. The arbitration certificate is consequently not enough to establish the amount in controversy.

#### 2. Injunctive Relief

"'In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation.'" *Cohn v. Petsmart, Inc.*, 281 F.3d 837, 840 (9th Cir. 2002) (quoting *Hunt v. Wash. State Apple Adver. Comm'n*, 432 U.S. 333, 347 (1977)). There is evidence that the injunction is worth somewhere between $4,222 per month, (Doc. 20 at 2), or as much as $151 per day, roughly $4,530 per month, (Doc. 1 ¶ 14). The monetary value of the injunction is contingent upon the length of Ms. Haldiman's life. (Doc. 10 at 9–10.) The value of the injunction will exceed $75,000 within a year or two and is thus probative evidence that the amount in controversy requirement has been met.

### 3. **Punitive Damages**

In addition, the court may consider damages for emotional distress, punitive damages, and attorneys' fees when calculating the amount in controversy. *See Kroske v. U.S. Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005) (stating that the amount in controversy includes attorneys' fees and that courts should include emotional distress damages as compared to similar cases); s*ee also Gibson v. Chrysler Corp.*, 261 F.3d 927, 945 (9th Cir. 2001) ("[P]unitive damages are part of the amount in controversy in a civil action.").

CCC contends that together, potential punitive damages and attorneys' fees exceed $75,000 because several other long-term care insurance coverage cases have authorized large rewards. (Doc. 19 at 6, 7 (citing cases).) Courts analyze comparable awards in determining the amount in controversy. *See, e.g.*, *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 578 (D. Ariz. 2003). Based on the cases cited by CCC, the amount in controversy requirement is met.

### 4. **Emotional Distress, Consequential, and Tort Liability Under Ariz. Rev. Stat. § 20-443**

The Haldimans have also made claims for emotional distress damages, consequential damages, and tort damages. (Doc. 1-1, Ex. A at 11, 12.) For these potential awards, CCC lists other similar cases where the award exceeded $75,000. As with punitive damages, those comparisons help demonstrate that it is more likely than not that the combination of emotional distress, consequential damages, and tort liability damages for this case will exceed $75,000.

### 5. **Compensatory Damages: Future Benefits**

Under the tort theory of bad faith, future benefits are included as compensatory damages. *See Leavey v. UNUM/Provident Corp.*, CV-02-2281-PHX-SMM, 2006 WL 1515999 (D. Ariz. May 26, 2006), *aff'd sub nom. Leavey v. Unum Provident Corp.*, 295 F. App'x 255 (9th Cir. 2008); *Greenberg v. Paul Revere Life Ins. Co.*, 91 F. App'x 539, 541–42 (9th Cir. 2004) ([W]ere the Arizona Supreme Court to address this issue, it would likely hold that future policy benefits may be awarded as compensatory damages."). Further, compensatory damages are included when calculating the amount in controversy. *Ansley v. Metro. Life Ins. Co.*, 215 F.R.D. 575, 577 (D. Ariz. 2003). Other district courts have allowed future benefits to be considered when

calculating the amount in controversy. *Albino*, 349 F. Supp. 2d at 1339 ("[T]he amount in controversy is met in this case because Plaintiff's future policy benefits could be awarded as compensatory damages under her claim for tortious breach of the covenant of good faith and fair dealing."); *Thomas v. Standard Ins. Co.*, CV-09-02121-PHX-JAT, 2010 WL 994507 at *2 (D. Ariz. Mar. 17, 2010). The present case involves a claim that CCC has breached the duty of good faith and fair dealing. (Doc. 1-1 at 10.) Thus, because future benefits are included as compensatory damages and compensatory damages are included when determining the amount in controversy, this Court will consider future benefits as part of the amount of controversy for this case.

Ms. Haldiman's benefits will reach $75,000 within a relatively short period of time. It is more likely than not that her future benefits, especially when combined with the value of the injunction, and the potential recovery for emotional and punitive damages will exceed $75,000. Thus, CCC has met its burden in proving the amount in controversy requirement has been met and this case will remain under this Court's jurisdiction.

**II.   ORDER TO SHOW CAUSE REGARDING REQUEST FOR PRELIMINARY INJUNCTION**

   **A.   Applicable Law**

While the Parties have not expressly addressed it, there is a question as to which legal standard—state or federal—should apply to the Haldimans' request for order to show cause. Under the principles set forth in *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938), and its progeny, a federal court with diversity jurisdiction over state law claims must apply state law to substantive claims and federal law to procedural issues. *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 726 (1966); *Hanna v. Plumer,* 380 U.S. 460, 464–66 (1965). To determine whether an issue is procedural or substantive, a court will decide whether the issue is outcome determinative with "reference to the twin aims of the Erie rule: discouragement of forum-shopping and avoidance of inequitable administration of the laws." *Id.* at 468.

The Haldimans cite the Arizona standard for a Temporary Restraining Order in their request, (Doc. 8 at 6–7), while CCC cites the federal standard for preliminary injunctions, (Doc.

- 6 -

12 at 8–9). This Court agrees with other courts in this district that Arizona state law for preliminary injunctions is not outcome determinative and that federal law therefore applies. *Compass Bank v. Hartley*, 430 F. Supp. 2d 973, 978 n.9 (D. Ariz. 2006) ("Although there is confusion over whether to utilize a federal or state law standard in examining requests for preliminary injunctions in diversity actions, in this case, federal law applies because the state law is not outcome-determinative under the *Erie* doctrine.")

### B. Legal Standard

To receive a preliminary injunction, a plaintiff must establish "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat'l Res. Def. Council,* 555 U.S. 7, 20 (2008); *see* Fed. R. Civ. P. 65. The Ninth Circuit continues to analyze these four elements using a "sliding scale" approach, in which "the elements of the preliminary injunction test are balanced, so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell,* 632 F.3d 1127, 1131 (9th Cir. 2011). The element of irreparable injury, however, is not subject to balance; the moving party must "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter,* 555 U.S. at 22, 129 S. Ct. 365 (emphasis in original).

### C. Analysis

#### 1. The Heightened Standard of a Mandatory Injunction

A prohibitory injunction preserves the status quo, *Johnson v. Kay,* 860 F.2d 529, 541 (2d Cir.1988), while a mandatory injunction "goes well beyond simply maintaining the status quo", *Stanley v. Univ. of S. Cal.*, 13 F.3d 1313, 1320 (9th Cir. 1994) (quoting *Anderson v. United States,* 612 F.2d 1112, 1114 (9th Cir.1979)). A district court should deny a mandatory preliminary injunction "unless the facts and law clearly favor the moving party." *Id.*

Here, the Haldimans are not seeking to preserve the status quo because they are requesting CCC to begin paying benefits where it has otherwise denied coverage. (Doc. 8 at 7.) Thus, the Haldimans are seeking a mandatory injunction, and, to obtain such relief, the facts and law must clearly favor them.

### 2. The Haldimans Have Not Shown that Irreparable Harm is Likely

A showing of irreparable harm is required to obtain a preliminary injunction. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Injuries that can be compensated with money are not normally considered irreparable. *Sampson v. Murray*, 415 U.S. 61, 90 (1974) ("Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay, are not enough. The possibility that adequate compensatory or other corrective relief … weighs heavily against a claim of irreparable harm.") (internal citations omitted); *Los Angeles Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980) ("[M]onetary injury is not normally considered irreparable.").

Here, the Haldimans contend that CCC's partial payment of benefits causes a "great deal of distress and damage under circumstances where an insured is forced to relocate from a long term care facility." (Doc. 8 at 7.) They have not argued that this type of injury cannot be compensated with money and they did not file a reply to CCC's response. The Haldimans have sought monetary relief in their complaint and presented a monetary offer of judgment for every alleged injury. (Doc. 1-1, Ex. A at 12–13, 16.) Although the Haldimans seek an injunction, the injunction sought is simply another request for money payments. (Doc. 1-1 Ex. A at 9–10.) And they have not presented evidence to substantiate their bare assertions that Ms. Haldiman has suffered irreparable harm due to CCC's denial of benefits. Irreparable injury is a fundamental requirement for a preliminary injunction and the Haldimans have not shown that they are likely to suffer irreparable harm in the absence of an injunction. In fact, any harm they may have suffered can be adequately compensated by damages. The heightened standard that the facts and law must clearly favor the Haldimans because they seek a mandatory injunction further weighs against granting a preliminary injunction. This Court need not address the other three prongs of the *Winter* test in denying the Haldimans' Second Application for Order to Show Cause because they have not met the irreparable harm requirement.

### CONCLUSION

The amount in controversy in this case likely exceeds $75,000 and the case therefore remains in federal court. The Haldimans' request for an Order to Show Cause is denied for

failure to demonstrate that irreparable harm is likely.

**IT IS THEREFORE ORDERED** that the Halimans' Motion to Remand, (Doc. 17), is **DENIED**.

**IT IS FURTHER ORDERED** that the Haldimans' Second Application for Order to Show Cause Regarding Request for Preliminary Injunction, (Doc. 8), is **DENIED**.

Dated this 2nd day of August, 2013.

G. Murray Snow
United States District Judge