WO

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Betty Lou Haldiman, an individual; and John B. Haldiman, Jr., an individual,<br><br>Plaintiffs,<br><br>v.<br><br>Continental Casualty Company, an Illinois corporation,<br><br>Defendant. | No. CV-13-00736-PHX-GMS<br><br>**ORDER** |

Pending before the Court are Defendant Continental Casualty Company's ("CCC") Motion for a Protective Order (Doc. 39) and Motion to Dismiss Counts Three and Five of Plaintiffs' First Amended Complaint (Doc. 33). For the following reasons both motions are **granted**.

## BACKGROUND

The First Amended Complaint in this case raises claims arising from Defendant's refusal to pay the extent of reimbursement for Plaintiff Betty Lou Haldiman's stay in a long term care facility that Plaintiffs believe is required under the Plaintiff's long-term care insurance policy with Defendant. (Plaintiffs' First Amended Complaint, Doc. 31, at ¶ 3.) The policy provides benefits during an "Eligible Confinement." (*Id*. at ¶ 4.) An "Eligible Confinement" is defined as Ms. Haldiman's "confinement for Long-Term Care in a Long-Term Care Facility." Plaintiff John B. Haldiman, Jr. and his wife, Joan Haldiman, submitted a request for benefits to cover services provided to Plaintiff Betty

Lou Haldiman by the Assisted Living Center on the Beatitudes Campus. (*Id*. at ¶¶ 5, 10, 14.) CCC inquired into the services provided at Ms. Haldiman's facility and determined that they did not meet the specifications required under the definition of "Long-Term Care Facility" under Ms. Haldiman's policy (Doc. 33-1, at 3) nor did they meet the broadened scope of coverage agreed to by CCC under the settlement terms of a class action suit in the United States District Court for the Northern District of Ohio (*Pavlov v. Continental Casualty Company*, No. 5:07-cv-2580; Doc. 33 at 3; Doc. 31 at 8-9), in which Ms. Haldiman was a class member.

Plaintiffs filed this suit alleging that Defendant's denial of coverage was a breach of contract and in bad faith. (Doc. 31.) Plaintiffs bring five claims: (1) Breach of Contract; (2) Bad Faith; (3) Unfair Practices and Frauds; (4) Injunctive Relief; and (5) Damages for Exploiting a Vulnerable Adult. (Doc. 31.) Defendant has filed a motion to dismiss counts three and five. (Doc. 33-1.)

Plaintiffs' Third Claim, for Unfair Practices and Frauds, is based upon Arizona's Unfair Insurance Practices statute, Ariz. Rev. Stat. § 20-443. This statute prohibits an insurer from misrepresenting the terms or benefits of an insurance policy. Plaintiffs allege that CCC made "false, misleading and deceptive statements to Plaintiffs and the Beatitudes regarding Plaintiff's eligibility" for coverage under her policy. (Doc. 31, at ¶ 34.) Defendants deny that they made any false statements, and claim that even assuming the truthfulness of all of the allegations against them, that these do not arise to the legal requirements of the A.R.S. § 20-443. Thus, Defendants have moved to dismiss this claim.

Plaintiffs' Fifth Claim, for Damages for Exploiting a Vulnerable Adult, is based on A.R.S. § 46-456, Arizona's Financial Elder Abuse statute. This statute protects vulnerable adults from unlawful actions by persons who are "in a position of trust and confidence" to that vulnerable adult. *Id*. Defendant claims that CCC did not enter into a special relationship with Plaintiffs as contemplated by this statute, and therefore have moved that this count be dismissed.

During discovery, Plaintiff sought production of CCC documents from a third-party claims administrator, Univita Health, Inc. ("Univita"). (Doc. 39-2 at 5.) This included "all documents relevant to the investigation and evaluation of any claim made by a first party insured against Continental Casualty Company." (*Id.*) CCC objected to this request on the grounds insofar that it sought "protected commercial, confidential, and trade-secret information." (*Id.*) CCC claims it instructed Univita not to produce a CCC Facility Evaluation guideline (the "Guideline"), which CCC claims contains claims-handling guidelines that are trade secrets and should be reasonably protected from discovery by CCC's competitors. (Doc. 39.) However, in response to Plaintiff's production request, Univita produced the Guideline. CCC now has made a motion for a protective order to designate the Guideline as confidential and to require Plaintiffs make reasonable efforts not to disclose the contents of the Guideline during the course of the litigation. (Doc. 39.)

**I.     DEFENDANT'S MOTION FOR A PROTECTIVE ORDER**

**A.     Legal Standard**

There are two legal standards for protective orders, only one of which is currently applicable here. The first is "a compelling reasons standard," which "applies to [the sealing of] most judicial records." *Pintos v. Pac. Creditors Ass'n,* 504 F.3d 792, 801 (9th Cir.2007) (citing *Kamakana v. City & County of Honolulu,* 447 F.3d 1172, 1178 (9th Cir.2006); *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1135–36 (9th Cir.2003)). Though Plaintiffs reference this standard, it is not yet applicable in this case, because the Facility Evaluation Guideline at issue has not been filed and is not yet part of the public record.

A "good cause" standard applies where, as is the case here, the materials at issue are discovery materials. "'Private materials unearthed during discovery' are not part of the judicial record." *Id.* (quoting *Kamakana,* 447 F.3d at 1180) (alteration omitted). The "good cause" standard set forth in Rule 26(c) of the Federal Rules of Civil Procedure applies to orders rendering this category of documents confidential. *See id.;*

1  *San Jose Mercury News, Inc. v. U.S. Dist. Ct.,* 187 F.3d 1096, 1103 (9th Cir.1999). Specifically, under Federal Rule of Civil Procedure 26, the Court may, for good cause, issue an order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(G). "For good cause to exist, the party seeking protection bears the burden of showing specific prejudice or harm will result if no protective order is granted." *Phillips ex rel. Estates of Byrd v. Gen. Motors Corp.*, 307 F.3d 1206, 1210-11 (9th Cir. 2002).[1]

**B. Analysis**

The Guideline is an internal guideline that CCC considers confidential and which it endeavors to keep confidential. (Affidavit of Christine Michals-Bucher, Doc. 39-1, at ¶ 5.) It was given to Univita to assist it in handling claims on behalf of CCC. (*Id.* at ¶ 6.) CCC does not provide the Guideline to policyholders, other insurance carriers, or other unauthorized persons. (*Id.* at ¶ 5.) The Guideline was developed by CCC using its own resources. (*Id.* at ¶ 4.) CCC asserts that making the Guideline available to its competitors will harm CCC, as CCC's competitors "could then appropriate CCC's unique procedures and techniques without making the substantial investment that CCC has in developing them." (Doc. 39, at 7.)

CCC also asserts that the Guideline constitutes a "trade secret" under Uniform Trade Secrets Act, Ariz. Rev. Stat. §§ 44-401, because CCC (1) derives economic value from it and (2) CCC takes appropriate efforts to maintain its secrecy. To prove these elements, a company employee's affidavit of these factors "is sufficient to fulfill [the requesting company's] burden of showing both the requisite confidential nature of the material and good cause for issuance of a protective order." *Cohen v. Metro. Life Ins.*

---

[1] The good cause standard also applies to the sealed filing of documents attached to non-dispositive motions because those documents are often "'unrelated, or only tangentially related, to the underlying cause of action.'" *Phillips v. G.M. Corp.,* 307 F.3d 1206, 1213 (9th Cir.2002); *see Pintos,* 504 F.3d at 802. Documents attached to dispositive motions such as motions for summary judgment, however, are governed by the compelling reasons standard. *See San Jose Mercury News,* 187 F.3d at 1102; *Foltz,* 331 F.3d at 1136.

- 4 -

*Co.*, 00CIV.6112(LTS)(FM), 2003 WL 1563349, at *1 (S.D.N.Y. Mar. 26, 2003). Numerous courts have used this language to find that insurer's claims-handling guidelines are trade secrets. *E.g.*, *Hamilton v. State Farm Mut. Auto. Ins. Co.*, 204 F.R.D. 420, 423 (S.D. Ind. 2001); *Pochat v. State Farm Mut. Auto. Ins. Co.*, CIV.08-5015-KES, 2008 WL 5192427, at *7-10 (D.S.D. Dec. 11, 2008); *Republic Services, Inc. v. Liberty Mut. Ins. Companies*, CIV.A. 03-494-KSF, 2006 WL 1635655, at *6 (E.D. Ky. June 9, 2006); see also *Takata v. Hartford Comprehensive Employee Ben. Serv. Co.*, 283 F.R.D. 617, 621 (E.D. Wash. 2012) (looking to § 757 of the Restatement of Torts and finding that the insurer's claims-handling materials were trade secrets).

Even without a finding that the Guideline is a trade secret, Rule 26 provides for protection of "confidential research, development, or commercial information." Thus an insurer seeking to protect its claims-handling manual "did not need to establish that it was protecting a trade secret to obtain a protective order—it merely had to show that the manual contained 'commercial information.'" *Anderson v. Reliance Standard Life Ins. Co.*, CIV. WDQ-11-1188, 2012 WL 835722, at *4 (D. Md. Mar. 9, 2012) (citing Fed.R.Civ.P. 26(c)(1)(G)). Univita's production of the Guidelines during discovery does not prevent CCC from seeking a protective order. CCC objected to the production of the confidential information when the third-party subpoena was issued, and instructed Univita not to produce the Guidelines. (Doc. 39-2 at 5; Doc. 39 at 9.) Furthermore, CCC's request does not affect Plaintiffs' use of the Guidelines, but only seeks to maintain the confidentiality of the Guidelines.

As Plaintiffs point out, protective orders are typically filed before discovery occurs. However, the Court "enjoys broad discretion in controlling discovery," *Whiting v. Hogan*, 12-CV-08039-PCT-GMS, 2013 WL 2476713, at *2 (D. Ariz. June 7, 2013). Likewise, Plaintiffs have pointed to no reason why issuing the protective order now, after the Guidelines have been produced, would prejudice them in any way. Instead, Plaintiffs have claimed that public policy supports the denial of a protective order, because "[p]ublic policy demands that Plaintiffs be given a free hand to expose to the whole

world the Defendant's bad faith claim handling." (Doc. 41 at 13.) This is simply an improper basis for the discovery and publication of the Guidelines or any other materials produced during discovery. Discovery is solely for the purpose of aiding a litigant in his or her own case. *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352 fn. 17 (1978); *Anderson v. Reliance Standard Life Ins. Co.*, No. 11-cv-1188, 2012 WL 835722, *3 (D. Md. Mar. 9, 2012). Defendant has shown good cause for a protective order and it is accordingly granted. Therefore, it is ordered that access to the Guideline must be limited to the parties and counsel of record; Plaintiffs will return or destroy all copies of the Guideline within thirty days after the completion of this litigation (including any appeals); if the parties wish to file the Guideline under seal, the parties shall follow the procedures set forth in Local Rules of Civil Procedure 5.6 and 5.7; and 7 days prior notice is required to seek to use the Guideline in trial or at any hearing before any judicial officer in order to give the opposing side opportunity to seek protection from the Court.

## II.     DEFENDANTS' MOTION TO DISMISS COUNTS THREE AND FIVE

### A.     Legal Standard

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact are assumed to be true and construed in the light most favorable to the nonmoving party. *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir.2009). Dismissal under Rule 12(b)(6) can be based on "the lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir.1990). To avoid dismissal, a complaint need contain only "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). The principle that a court accepts as true all of the allegations in a complaint does not apply to legal conclusions or conclusory factual allegations. *Ashcroft v. Igbal,* 566 U.S. 662, 678 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* To show that the plaintiff is entitled to relief, the complaint must permit the court to infer more than the mere possibility of misconduct. *Id.*

Under the "incorporation by reference" doctrine, it is permissible on a motion to dismiss "to take into account documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (quoting *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 986 (9th Cir.1999). The incorporation by reference doctrine has been extended by the 9th Circuit "to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Id.*; *see also Parrino v. FHP, Inc.,* 146 F.3d 699, 706 (9th Cir.1998) (holding that the district court properly considered documents attached to a motion to dismiss that described the terms of plaintiff's group health insurance plan, where plaintiff alleged membership in the plan, his claims depended on the conditions described in the documents, and plaintiff never disputed their authenticity).

### 1.     Count Three: Unfair Insurance Practices Claim

Under a claim "pursuant to A.R.S. § 20–443, Plaintiff must plead with particularity the statutory elements found in this provision." *Williamson v. Allstate Ins. Co.*, 204 F.R.D. 641, 645 fn. 4 (D. Ariz. 2001); see also *Beshears v. Provident Life & Acc. Ins. Co.*, CV-07-00292-PHX-DGC, 2007 WL 1438738, at *3 (D. Ariz. May 15, 2007) ("The particularity requirement of Rule 9(b) applies to [Arizona Consumer Fraud Act] claims."). Plaintiffs' Complaint (Doc. 31) does not single out the allegations that provide the basis for a claim for Unfair Insurance Practices under A.R.S. § 20-443, but rather incorporates all allegations by reference under their Complaint's Unfair Insurance

1 Practices Claim section.  (Doc. 31 at 7.)  However, no allegations in the Complaint are
2 sufficient for Count Three to survive a motion to dismiss.

3 One of Plaintiffs' allegations is that in denying coverage "[CCC] stated that they
4 would not provide promised benefits because the floor at the Beatitudes where Betty Lou
5 Haldiman is a resident does not provide nursing services." (Doc. 31, at ¶ 10.)  Plaintiffs
6 in their Complaint then quote a portion of CCC's January 8, 2013 letter denying coverage
7 as follows: "The Beatitudes Campus Assisted Living Center does not provide 24-hour-a-
8 day nursing services. Additionally, a R.N., L.V.N. or L.P.N. is not onsite at the facility 5
9 hours a day, 7 days a week providing supervision of nursing services to all residents of
10 the facility."  (Doc. 31, at ¶ 14.)  Using the incorporation by reference doctrine, it is
11 appropriate here to consider the referenced correspondence between the parties because
12 the contents of the documents are referenced by Plaintiffs in their Complaint (*Id.*), they
13 were attached to Defendant's Motion to Dismiss (Doc. 33-1, Ex. 2-5), and Plaintiffs do
14 no question their accuracy or applicability to Count Three (Doc. 38 at 7).  *Knievel*, 393
15 F.3d at 1076.

16 When the entire paragraph from the letter referenced by Plaintiffs is considered,
17 however, it is apparent that the basis for the denial of coverage was not the nursing
18 services on the floor Ms. Haldiman occupied, but rather that "on-site nursing services are
19 only provided to all residents of the facility Monday–Friday for, approximately, 8 hours
20 per day," instead of seven days a week as required under the Pavlov class action
21 settlement.  (Doc. 33-5 at 3.)  There is, in fact, no reference at all to the floor Ms.
22 Haldiman occupied, no indication that the services differed floor-by-floor in the facility,
23 nor any claim that the services provided on Ms. Haldiman's particular floor served as a
24 basis for the denial of coverage.  (*Id*.)

25 In their response to the motion to dismiss, Plaintiffs cite the standard for a
26 statutory misrepresentation claim found in *Stratton v. American Med. Sec. Inc.*, 2008 U.S.
27 Dist. Lexis 40778, 2008 WL 2039313 (Dist. Ariz. 2008).  However, this standard relates
28 to a false promise or misrepresentation "in connection with sale or advertisement of

merchandise." *Id.* at *7. No such claim was put forth in Plaintiffs' Complaint. (Doc. 31.) Plaintiffs' Complaint makes no allegations regarding misrepresentations made by CCC during the sale or marketing of its policy. This legal standard, and the accompanying additional facts regarding the marketing of CCC's policies which Plaintiffs put forward in their response to the motion to dismiss (Doc. 38 at 8), are therefore inapplicable to a motion to dismiss Plaintiffs' Unfair Insurance Practices claim.

Plaintiffs have conceded that the policy and correspondence between the parties as submitted by Defendant is appropriately considered on a motion to dismiss (Doc. 38 at 7), but can point to no misrepresentation by CCC in those materials. A claim under A.R.S. § 20-443 cannot survive a motion to dismiss by taking "cherry-picked certain portions of the denial letter while ignoring other portions of the denial letter which clearly explain and support [the insurance company's] denial of coverage" *Little v. USAA Cas. Ins. Co.*, 655 F. Supp. 2d 625 (W.D. La. 2009) aff'd, 09-30948, 2010 WL 4909869 (5th Cir. Apr. 2, 2010). Count Three of the First Amended Complaint is dismissed.

### 2. Plaintiffs' Financial Elder Abuse Claim

Plaintiffs allege that CCC has violated A.R.S. § 46-456(A), Arizona's Financial Elder Abuse Statute, which requires that a person "who is in a position of trust and confidence to a vulnerable adult shall use the vulnerable adult's assets solely for the benefit of the vulnerable adult." *Id.* The statute itself defines a person in a "position of trust and confidence" as either:

> (a) A person who has assumed a duty to provide care to the vulnerable adult;
>
> (b) A joint tenant or a tenant in common with a vulnerable adult;
>
> (c) A person who is in a fiduciary relationship with a vulnerable adult including a de facto guardian or de facto conservator; or
>
> (d) A person who is in a confidential relationship with the vulnerable adult. The issue of whether a confidential relationship exists shall be an issue of fact to be decided by the court based on the totality of the circumstances.
> Ariz. Rev. Stat. § 46-456(I)(4).

> This statute was not intended to include insurers administering claims. Instead, this Act "'was intended to increase the remedies available to and for elderly people who had been harmed by their caregivers.'" *In re Estate of Wyttenbach*, 219 Ariz. 120, 123, 193 P.3d 814, 817 (Ariz. Ct. App. 2008) (quoting *Estate of McGill ex rel. v. Albrecht*, 203 Ariz. 525, 528, ¶ 6, 57 P.3d 384, 387 (Ariz. 2002). Particularly, it was "aimed at family and friends who take advantage of a vulnerable adult." *In re Estate of Newman*, 196 P.3d 863, 872 (Ariz. Ct. App. 2008) (quoting legislative history).

Plaintiffs have put forth no allegations that give rise to one of the above relationships between CCC and Ms. Haldiman. "In Arizona, an insurer is not a fiduciary for its insured." *Morrow v. Boston Mut. Life Ins. Co.*, No. CIV. 06-2635-PHX-SMM, 2007 WL 3287585, at *3 (D. Ariz. Nov. 5, 2007); see also *Certain Underwriters at Lloyds, London v. Payson Premier, LLC*, No. 2 CA-CV 2008-0169, 2009 WL 1156705, at *3 (Ariz. Ct. App. Apr. 29, 2009) ("Payson is correct that an insurer must deal fairly and honestly with its insured, but there is no true fiduciary relationship between insurer and insured.").

Additionally, there is no basis for believing that CCC was in a "confidential relationship" with Ms. Haldiman. The Supreme Court of Arizona stated that:

> ***[A] confidential relation *** is a relation of parties in which one is bound to act for the benefit of the other and can take no advantage to himself from his acts relating to the interest of the other *** it is denied that *** mere confidence or implicit faith in another's honesty and integrity is sufficient to constitute a fiduciary or confidential relationship. So too, mere friendly relations are insufficient for this purpose.

*In re McDonnell's Estate*, 179 P.2d 238, 241 (Ariz. 1947) (stars in original) (internal citation omitted). There is no allegation that CCC had any relationship with Ms. Haldiman outside of the interaction regarding her insurance claim. CCC had no control over Ms. Haldiman's assets or any involvement in her life outside of administering the claim under the insurance policy sold to her. Plaintiffs have merely stated in a

conclusory fashion that that CCC "is in a position of trust and confidence to Betty Lou Haldiman." (Doc. 31, at ¶ 41.) However, [t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Count Five is dismissed.

**IT IS THEREFORE ORDERED** that Defendant Continental Casualty Company's ("CCC") Motion for a Protective Order (Doc. 39) and Motion to Dismiss Counts Three and Five of Plaintiffs' First Amended Complaint (Doc. 33) are **GRANTED**.

**IT IS FURTHER ORDERED** that the conduct of discovery shall be governed by the following parameters:

1. Access to Defendant Continental Casualty Company's Facility Evaluation guideline shall be limited to the parties and counsel of record unless otherwise ordered by the Court;

2. Within thirty days after the completion of this litigation (including any appeals), Plaintiffs will return or destroy all copies of the Facility Evaluation guideline;

3. In the event the parties wish to file this document under seal, the parties shall follow the procedures set forth in Local Rules of Civil Procedure 5.6 and 5.7;

4. At the trial of this litigation or any hearing relating to this action before any judicial officer, if either party seeks to use this document it must give 7 days prior notice of such use to counsel for the other party to permit it the opportunity to seek appropriate protection from the Court.

Dated this 13th day of February, 2014.

*A. Murray Snow*
G. Murray Snow
United States District Judge